## Case No. 13,287.

STANLEY RULE & LEVEL CO. v. BAILEY.

[14 Blatchf. 510;[1] 3 Ban. & A. 297.]

Circuit Court, D. Connecticut. June 21, 1878.

PATENTS — GRANT OF EXCLUSIVE RIGHT TO MAKE AND VEND — ACTION AGAINST PATENTEE FOR INFRINGEMENT — CONTRACT — BENCH PLANE.

1. B., a patentee, granted to S. the exclusive right to make and vend the invention during the life of the patent, for a royalty. S. sued B., in equity, alleging that he was infringing the patent: Held, that, whether S. was a licensee or a grantee, he was suing B. on an infringement, and that the court had jurisdiction of the suit.

2. The conditions in the instrument executed by B. to S. were held to be conditions subsequent, and it was held that such right as

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

passed to S. remained till a forfeiture was enforced.

3. The Victor plane, covered by letters patent granted to Leonard Bailey, December 12th, 1876, is an infringement of the third and fourth claims of the reissued letters patent granted to Leonard Bailey, June 22d, 1875, the original patent having been granted to him August 6th, 1867.

[This was a bill in equity by the Stanley Rule & Level Company against Leonard Bailey for the infringement of reissued letters patent No. 6,498, granted to defendant June 22, 1875, the original letters patent, No. 67,398, having been granted August 6, 1867.]

Charles E. Mitchell and Benjamin F. Thurston, for plaintiff.

William E. Simonds and Charles Levi Woodbury, for defendant.

SHIPMAN, District Judge. This is a bill in equity to restrain the defendant from an alleged infringement of the plaintiff's exclusive right to make and vend the bench planes for which reissued letters patent No. 6,498, dated June 22d, 1875, were granted to the defendant. The original patent was dated August 6th, 1867. The plaintiff is a Connecticut corporation. The defendant is a citizen and inhabitant of the town of Hartford, in this district. On May 19th, 1869, the defendant, being then and now the owner of said reissued letters patent, granted, by instrument in writing, to the plaintiff, "the exclusive right to make and vend said planes, (spokeshaves and veneer scrapers,) on the conditions and for the considerations hereinafter specified, said right to continue during the life of the patents above referred to, or any extensions thereof; that said Stanley Rule and Level Company agree to make and keep on hand a sufficient stock of said planes, (spokeshaves and veneer scrapers,) to supply all demands for the same, and to use diligence in the sale of them at their warehouses, to keep an accurate account of all sales made of said planes, (spokeshaves and veneer scrapers,) and to pay to said Leonard Bailey, his heirs, executors, or administrators, the sum of five per cent. on the prime cost of manufacturing said planes," &c., as a royalty for said exclusive use, to render an account of sales once in six months, and to pay such royalty within thirty days after the date of the semi-annual accounts. If the patentee should make any improvements upon said planes, the plaintiff had the right to use the improvements upon the same terms as hereinbefore expressed, and without additional royalty. The bill alleges, that, by virtue of this agreement, the plaintiff became the equitable owner of the reissued patent, and that the defendant is infringing its exclusive right by the manufacture and sale, in large numbers, without its permission, of planes made according to and containing the patented invention, or material and substantial parts thereof.

It is agreed, that the defendant is estopped to deny the novelty of said patented invention. He admits, in his answer, his title to the letters patent, and that he entered into said agreement, and that he has made and sold planes called the "Victor plane," but denies that they are an infringement of the reissued patent. The answer alleges, that the plaintiff has violated its agreement, and has, therefore, no right to have the aid of a court of equity against the defendant. By amendments allowed when the case was argued, this general averment was made definite and explicit. Further time was not asked in which to take additional testimony.

It is not necessary, in this case, the patentee and legal owner of the patent being the alleged infringer, to determine whether, under the recited agreement, the plaintiff is the grantee of such an exclusive right that it can bring suit in its own name alone against strangers who are infringers, or is, as is claimed by the defendant, merely a licensee. In this case, the patentee is the alleged infringer, and the circuit court has jurisdiction of the cause, whether the plaintiff is grantee or licensee. When the patentee has infringed his license, and, while holding the legal title to the patent in trust for his licensee, has been faithless to his trust, "courts of equity are always open to the relief of such a wrong. This wrong is an infringement. Its redress involves a suit, therefore, arising under the patent laws, and of that suit the circuit court has jurisdiction." Littlefield v. Perry, 21 Wall. [88 U. S.] 205, 223.

It is objected, by the defendant, that the bill is defective, inasmuch as the exclusive grant or license was granted under certain conditions, and it is not affirmatively averred that the plaintiff has kept and fulfilled the conditions, and thus has a continuing right to the enjoyment of the license. Assuming that the terms and considerations of the agreement, in regard to the exercise of diligence in the sale of the planes, and in regard to the payment of royalties, were conditions, and that, for the non-payment, or other non-performance a forfeiture might be enforced, as for condition broken, the conditions were plainly conditions subsequent, and, until a forfeiture is enforced, the right or title which had theretofore vested remains in the licensee. Littlefield v. Perry, 21 Wall. [88 U. S.] 205. In this case, no notice had been given by the defendant, before the date of the suit, of any intention to claim a forfeiture.

The substantial question in the case is that of infringement, and the decision of this question depends much upon the construction which shall be given to the reissued patent in view of the state of the art at the time of the invention. The portion of the invention which is in controversy relates to the means of adjustment to its work, of the plane iron, in a bench plane having double irons, or a compound plane

iron. A compound plane iron, which is an old device, consists of the cutting iron, and an upper cap iron, or break iron, which does not cut, but, by its bevel edge, turns and breaks the shaving, so that it shall not run into the fibre of the wood. The cutting iron is thus allowed to make a smooth cut. Speaking very generally, the two irons are united by means of a screw, one iron or the other having a longitudinal slot, so that the relation of the cutter to the cap iron may be changed when the cutter is worn away by use. The means of adjustment are for the purpose of adjusting the plane iron to its work upon the wood, in accordance with the desire of the workman to make a deep or shallow cut.

Two planes are referred to as showing the existing state of the art prior to the invention of the plane of 1867. One was an invention of Mr. Bailey, patented in 1858. In this plane, the two irons were united by a screw, before being inserted in the stock. The plane iron had a centrally located, longitudinal slot, with a circular enlarged orifice at its upper end. The cap iron had a broad-headed clamp screw, the diameter of the head of the screw being greater than the width of the slot, while it was small enough to pass through the orifice at the upper end of the slot. The double iron was firmly secured in the stock by a cap lever. Thus the two irons can be adjusted to each other before being inserted in the stock, and are detachable from the stock, when united. This is the ordinary, and an old, form of compound plane iron. In such a double iron the screw is substantially a part of the cap plate. The plane iron was adjusted by the motion of a travelling seat or bed, which was attached to the stock, the travelling seat being moved to and from the throat of the plane by a lever.

The Hunt plane of 1860 had a compound plane iron, not detachable from the stock, when united. The two irons could not be fastened together, or firmly adjusted, relatively to each other, before being inserted in the stock. When placed in the stock, they were both fastened by a screw to a moving slide, which was a part of the stock. The plane iron was adjusted to its work by a screw mechanism operating upon the moving slide or seat.

The invention of 1867 discarded a travelling seat or slide, and an adjustment of the plane iron by means of frictional contact between itself and the travelling seat, as in the plane of 1858. It connected the adjusting mechanism directly with the cap plate. The compound plane iron of the patent of 1858, that is to say, one in which the double irons were adjustably united before being inserted in the stock, was adjusted by means of a bent lever attached to the stock, and connected with the cap plate, and operated by screw mechanism. Overlying the longitudinal slot in the plane

iron was a mortise in the cap iron. One end of the lever entered into the mortise, and, as the lever was moved, it positively and directly operated upon the cap iron, and moved forward and downward both cap iron and plane iron, which were clamped together and formed a compound plane iron. The invention consisted of the adjustment of the plane iron in the ordinary compound plane iron, by means of a lever and screw, or equivalent mechanism, which was positively connected with the cap iron at a point always the same, and acting upon the plane iron immediately through the cap plate thus connected with the lever. Adjustment through a travelling seat and its contact with the compound plane iron was abandoned, and adjustment was effected by a lever and screw, or its equivalent, positively acting upon the cap plate. The patentee caused his lever to act upon the cap plate through a mortise in the plate. Modifications of this method of connecting the adjusting mechanism with the cap plate could easily be suggested by mechanical skill, which would not vary the principle of the invention. If the lever should be connected with the cap plate upon its under face, or should be connected by a pin which was attached to the plate and extended through the slot, the principle of the invention would be unchanged. Equivalent mechanism, known at the date of the invention, which accomplished in the same way, and by the same mechanical means, the same result of adjustment by its direct and positive action upon the cap iron at a point always the same, the plane

[Drawing of reissued patent No. 6,498, granted June 22, 1875, to L. Bailey, published from the records of the United States patent office.]

iron having variable relations with the cap plate, and thus with the adjusting mechanism, is protected by the patent.

The third claim of the reissue, is for "the combination of the nut n, lever m, and plate h, with the plane iron, substantially as described." The fourth claim is for "the combination of the plane iron, plate h, (cap plate,) and lever m, substantially as described." Construed in connection with the descriptive part of the specification, and in view of the state of the art, the fourth claim is for the combination, substantially as described, of the cutter iron and cap iron, adjustably united by a screw in the cap iron to the plane iron, (being the ordinary compound plane iron,) and the lever operating, by positive connection with the cap iron, to adjust the cutting iron up and down between the same limits as those in which the cap iron can move.

The infringing device, called the "Victor plane," was patented to Leonard Bailey, December 12th, 1876. It has the compound plane iron of the Bailey patent of 1858, and substantially the double iron of the patent of 1867, with the exception that there is no mortise in the cap iron. The plane iron is adjusted by means of a gear wheel, carrying a crank pin, and secured to the stock by means of a short shaft. The crank pin is connected to a pitman which moves forward and backward, and has at its lower end a circular orifice for receiving the broad head of the screw which clamps the cap iron and plane iron together. Power applied to the gear wheel moves the crank pin and pitman, and, consequently, the screw head, which is a part of the cap plate. The cap plate is adjustably united to the cutting bit by the friction of the screw head, and through the cap plate the cutting iron is moved. The impulse is not directly imparted to the cutting bit, which receives its impulse because it is clamped through the slot, by the screw, to the cap plate. The adjusting device is positively connected with the cap plate and adjustably connected with the plane iron, the cap plate and plane iron are kept in contact with each other by the strong clamp of the screw head, and motion is imparted to the plane iron by means of the positive connection of the adjusting mechanism with the cap plate. As stated by the plaintiff's expert, "in the Victor plane, the impulse of the adjusting device is imparted, through the medium of the cap plate, by a mere inversion of the parts shown in the Bailey reissued patent, that is to say, in the Victor plane the screw is a part of the cap iron, and forms a projection thereon, extending through the slot in the plane iron, and into a mortise in the adjusting device, whereas, in the reissued patent, a projection on the adjusting device extends up through a slot in the plane iron into a mortise in the cap iron; and, in both devices, the result is precisely the same, to wit, the adjustment of the plane iron through the medium of the cap plate."

It is obvious, that the Victor plane is not the Bailey plane of 1858, neither is it a reproduction of the Hunt plane of 1860. In that plane, the adjusting device was attached to a travelling bed; and, furthermore, while the Hunt plane has a compound plane iron, it has not the compound iron of the three Bailey planes. The Hunt plane has a compound plane iron in which the two irons cannot be united before they are inserted in the stock. This peculiarity made this plane practically unsuccessful, and, although, theoretically, the Bailey invention may be attached to the Hunt plane, I do not believe that, practically, such a combination would be successful.

The adjusting mechanism of the Victor plane is a well known equivalent for the lever and screw of the Bailey plane of 1867.

The defendant claims that the plaintiff has violated its agreement, in not using due diligence to sell the Bailey planes, and in devoting its time and attention improperly to a sale of a competing plane. The testimony shows that this averment is not at all sustained by the facts.

Let there be a decree for an injunction and an account, in respect to the third and fourth claims of the patent.